# NO. 12-11-00398-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

| | | |
|---|---|---|
| *G.D. HOLDINGS, INC.,* *APPELLANT* | § | *APPEAL FROM THE 273RD* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *H.D.H. LAND & TIMBER, L.P.,* *APPELLEE* | § | *SHELBY COUNTY, TEXAS* |

## *OPINION*

G.D. Holdings, Inc. (GDH) appeals the trial court's judgment in favor of H.D.H. Land & Timber, L.P. (HDH). In one issue, GDH contends that the trial court erred because there is no evidence, or insufficient evidence, to support the trial court's contract and promissory estoppel findings. We affirm.

## BACKGROUND

On May 29, 2007, John D. Harvey, as general partner of HDH, and Dsirajlal Babaria, as president of GDH, signed a $300,000.00 real estate contract. John Griffin, an attorney, prepared the contract, which provided that HDH would sell, and GDH would purchase, nine acres of land in Joaquin, Shelby County, Texas. The contract also included the following clause:

Buyer shall pay seller for dozer work and cleanup of property if transaction does not close.

Harvey signed the contract, which was then sent to Babaria. However, Babaria struck out the above clause, initialed it, and returned it to Griffin. When Griffin notified Harvey that Babaria struck out the clause, Harvey refused to initial the change. Harvey stated that Babaria demanded the property be cleared before the sale closed. He testified that the cost of clearing the property was the reason Babaria deposited $30,000.00 with Griffin as earnest money. Babaria was unable to obtain financing for the purchase of the nine acres and the sale did not close. When Babaria

requested that Griffin return the earnest money, Harvey refused to consent because the property had been cleared and the contractor paid.

GDH sued HDH for the return of the earnest money. HDH filed an original answer and counterclaim, alleging that the parties had a valid written contract, that GDH failed to close the sale without cause or justification, and that HDH was entitled to cancel the contract and receive the earnest money as liquidated damages. In the alternative, HDH alleged that it was entitled to recover the monies because it relied upon GDH's representations. At some point, Griffin tendered the earnest money into the registry of the court.

Following a bench trial, the trial court signed a judgment in favor of HDH, awarding it $27,390.00 in damages with interest at the rate of 5% per annum, and $7,500.00 in attorney's fees. At GDH's request, the trial court filed findings of fact and conclusions of law. This appeal followed.

## ISSUE PRESENTED

In one issue, GDH contends that the trial court erred in awarding damages to HDH because there was no evidence, or insufficient evidence, to support the trial court's findings that the parties created a binding written contract or that HDH established the requirements to recover under a theory of promissory estoppel.[1]

## STANDARD OF REVIEW

When, as in this case, specific findings of fact and conclusions of law are filed and a reporter's record is before the appellate court, the findings will be sustained if there is evidence to support them, and the appellate court will review the legal conclusions drawn from the facts found to determine their correctness. *Rus-Ann Dev., Inc. v. ECGC, Inc.*, 222 S.W.3d 921, 925 (Tex. App.–Tyler 2007, no pet.). Findings of fact in a case tried to the court have the same force and dignity as a jury's verdict upon questions. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them by the same standards that are applied in reviewing evidence supporting a jury's answer. *Main Place Custom Homes, Inc. v. Honaker*, 192 S.W.3d 604, 614 (Tex. App.—Fort Worth 2006, pet. denied).

---

[1] GDH does not challenge the trial court's award of attorney's fees.

We review a trial court's conclusions of law de novo. *State v. Heal*, 917 S.W.2d 6, 9 (Tex. 1996); *Potcinske v. McDonald Prop. Inv., Ltd.*, 245 S.W.3d 526, 529 (Tex. App.–Houston [1st Dist.] 2007, no pet.). When performing a de novo review, we exercise our own judgment and redetermine each legal issue. *Sembera v. Petrofac Tyler, Inc.*, 253 S.W.3d 815, 822 (Tex. App.– Tyler 2008, pet. denied). To make this determination, we consider whether the conclusions are correct based on the facts from which they are drawn. *Potcinske*, 245 S.W.3d at 529.

A party who challenges the legal sufficiency of the evidence to support an issue upon which it did not have the burden of proof at trial must demonstrate on appeal that there is no evidence to support the adverse finding. *Bright v. Addison*, 171 S.W.3d 588, 595 (Tex. App.— Dallas 2005, pet. denied). When reviewing a "no evidence" issue, we determine "whether the evidence at trial would enable reasonable and fair minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). In making this determination, we must credit favorable evidence if a reasonable finder of fact could, and disregard contrary evidence unless a reasonable finder of fact could not. *Id*.

If a party is attacking the factual sufficiency of an adverse finding on an issue on which the other party had the burden of proof, the attacking party must demonstrate that there is insufficient evidence to support the adverse finding. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983). In addressing a factual sufficiency of the evidence challenge, we must consider and weigh all of the evidence and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam).

The finder of fact is the sole judge of the credibility of the witnesses and the weight to be assigned to their testimony. *See Canal Ins. Co. v. Hopkins*, 238 S.W.3d 549, 557 (Tex. App.— Tyler 2007, pet. denied) (citing *City of Keller*, 168 S.W.3d at 819). The finder of fact is free to believe one witness and disbelieve another, and reviewing courts may not impose their own opinions to the contrary. *Id.* Accordingly, we must assume that the finder of fact decided all credibility questions in favor of the findings if a reasonable person could do so. *Id.*

Moreover, it is within the finder of fact's province to resolve conflicts in the evidence. *Canal*, 238 S.W.3d at 557 (citing *City of Keller*, 168 S.W.3d at 820). Consequently, we must assume that, where reasonable, the finder of fact resolved all conflicts in the evidence in a manner consistent with the findings. *Id*. Where a reasonable finder of fact could resolve conflicting evidence either way, we must presume the finder of fact did so in favor of the findings. *Id.* Where

3

conflicting inferences can be drawn from the evidence, it is within the province of the finder of fact to choose which inference to draw, so long as more than one inference can reasonably be drawn. *Id.* Therefore, we must assume the finder of fact made all inferences in favor of the findings if a reasonable person could do so. *Id.*

**ESSENTIAL TERMS OF CONTRACT**

As part of its sole issue, GDH argues that there was never a contract between the parties for the sale of the nine acres and therefore, HDH could not recover for breach of contract. We agree.

### Applicable Law

The elements of an enforceable contract are (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) a communication that each party consented to the terms of the contract; (5) execution and delivery of the contract with an intent that it become mutual and binding on both parties; and (6) consideration. *Advantage Physical Therapy, Inc. v. Cruse*, 165 S.W.3d 21, 24 (Tex. App.–Houston [14th Dist.] 2005, no pet.). For a contract to be formed, the minds of the parties must meet with respect to the subject matter of the agreement and all its essential terms. *Argo Data Resource Corp. v. Shagrithaya*, 380 S.W.3d 249, 274 (Tex. App.–Dallas 2012, no pet.); *see also* *Potcinske*, 245 S.W.3d at 530 ("'Meeting of the minds' describes the mutual understanding and assent to the agreement regarding the subject matter and the essential terms of the contract.").

The material terms of the contract must be agreed upon before a court can enforce the contract. *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992). An acceptance must not change the terms of an offer; if it does, the offer is rejected. *Gilbert v. Pettiette*, 838 S.W.2d 890, 893 (Tex. App.–Houston [1st Dist.] 1992, no pet.). Acceptance must be identical to the offer in order to make a binding contract. *Id*. A material change in a proposed contract constitutes a counteroffer, which must be accepted by the other party. *Id*. The question of whether a contract contains all of the essential terms for it to be enforceable is a question of law. *Parker Drilling Co. v. Romfor Supply Co.*, 316 S.W.3d 68, 74 (Tex. App.–Houston [14th Dist.] 2010, pet. denied). Contracts should be examined on a case by case basis to determine which terms are material or essential. *Id*. A contractual provision dealing with payment is always an essential element or a material term. *See id*. (citing *John Wood Group USA, Inc. v. ICO, Inc.*, 26 S.W.3d 12, 20 (Tex. App.—Houston [1st Dist.] 2000, pet. denied); BLACK'S LAW DICTIONARY 1510 (8th ed. 2004)).

**Analysis**

Here, there is no dispute between the parties that they had not agreed in writing about what would happen to the earnest money if the sale did not close. Thus, the parties did not have a "meeting of the minds" on an essential term of the contract. *See Potcinske*, 245 S.W.3d at 530. Further, when Babaria struck out the term describing his responsibility to pay for clearing the nine acres, Harvey's offer was rejected. *See Gilbert*, 838 S.W.2d at 893. Because Babaria's change regarded the earnest money, a material or essential term of the contract, Harvey must have accepted the change for a contract to be formed. *See Parker Drilling Co*., 316 S.W.3d at 74. Harvey did not do so. Therefore, no contract for the sale of the nine acres was ever formed between GDH and HDH. *See Shagrithaya*, 380 S.W.3d at 274. Accordingly, we sustain that portion of GDH's issue regarding HDH's breach of contract cause of action.

**PROMISSORY ESTOPPEL**

GDH also contends in its sole issue that HDH did not meet the requirements to recover under the theory of promissory estoppel.

**Applicable Law**

The requisites of promissory estoppel are (1) a promise; (2) foreseeability of reliance thereon by the promissor; and (3) substantial reliance by the promissee to his detriment. *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983). When a promissor induces substantial action or forbearance by another, promissory estoppel prevents any denial of that promise if injustice can be avoided only by enforcement. *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 133 (Tex. 2005). Promissory estoppel does not create liability where none otherwise exists, but "prevents a party from insisting upon his strict legal rights when it would be unjust to allow him to enforce them." *Id*. (quoting *Wheeler v. White*, 398 S.W.2d 93, 96 (Tex. 1965)). Damages recoverable in a case of promissory estoppel are not the profit that the promisee expected, but only the amount necessary to restore it to the position it would have been in had it not acted in reliance on the promise. *Fretz Const. Co. v. S. Nat'l Bank*, 626 S.W.2d 478, 483 (Tex. 1981).

**Findings of Fact and Conclusions of Law**

The trial court made the following findings of fact and conclusions of law regarding HDH's recovery of damages based upon promissory estoppel:

5

(9)  [GDH], or [its] officers, employees, agents or associates, represented to [HDH] that [its] purchase of the property was contingent upon [HDH] obtaining an acceptable survey and clearing and leveling the property prior to closing.

(10)  Relying upon the representations of [GDH], or [its] officers, employees, agents or associates, [HDH] obtained a survey of the property at a cost of $1,500.00.

(11)  Relying upon the representations of [GDH], or [its] officers, employees, agents or associates, [HDH] cleared and leveled the property at a cost of $25,890.00.

(12)  [HDH] would not have obtained the survey or cleared and leveled the property but for [GDH's] representation that the same were necessary for the sale of the property to take place and that, if the sale did not take place, [HDH] would be reimbursed for the cost.

(13)  Neither the survey nor the clearing and leveling work done by [HDH] increased the value or marketability of the property.

CONCLUSIONS OF LAW

(4)  [HDH] is entitled to recover the amounts expended by it for surveying, clearing and leveling in reliance upon [GDH's] requests and representations.


## Analysis

At trial, Harvey testified that while he and Babaria were negotiating the terms of the contract, Babaria told him that he wanted the nine acres cleared before closing the sale. He stated that Babaria said he was not in a position to clear the land himself, and requested that Harvey clear the property prior to closing.  Harvey testified that, during the negotiations, he and Babaria met on the site of the nine acres prior to Griffin's preparation of the written contract. According to Harvey, he arranged for Johnny Alford with North Toledo Bend Contractors, whom he hired to clear the property, to be at his meeting with Babaria. Harvey stated that Alford met Babaria before unloading his bulldozer to begin clearing the property.  Harvey also testified that he told Babaria that clearing the property would cost approximately $30,000.00, and informed Babaria that this amount should be the earnest money for the contract.  It is undisputed that Babaria tendered $30,000.00 in earnest money to Griffin, the closing agent for the transaction. Harvey also testified that Alford completed clearing the property in about two weeks.  He stated that the clearing was substantially completed when he was informed by Griffin that Babaria struck out the clause in the real estate contract, refusing to pay for the clearing if the sale did not close.  According to Harvey, he paid Alford and a subcontractor for clearing the property.

Babaria denied that he spoke with Harvey regarding his need for the nine acres to be cleared prior to closing the sale. He also denied agreeing to pay for the clearing. Babaria testified that he did not remember seeing Alford. He stated that he believed the clearing began prior to his meeting with Harvey at the property site. Babaria based his belief on the fact that he saw cut logs on the property at that time. In rebuttal, Harvey testified that he had had timber cut off the property approximately six months earlier, and that Babaria saw the remains of that operation.

The trial court may take into consideration all of the facts and surrounding circumstances in connection with the testimony of each witness, and accept or reject all or any part of that testimony. *See Santa Fe Petroleum v. Star Canyon Corp*., 156 S.W.3d 630, 638 (Tex. App.–Tyler 2004, no pet.). Where enough evidence is before the fact finder that reasonable minds could differ on the meaning of the evidence, or the inferences and conclusions to be drawn from the evidence, we may not substitute our judgment for that of the fact finder. *See id*. Here, Babaria and Harvey testified to two different versions of the facts. The trial court believed Harvey, and as the trier of fact, it was within its province to do so in resolving conflicts in the evidence and judging the credibility and the weight of the witness's testimony. *See Canal*, 238 S.W.3d at 557. Thus, because Harvey's testimony supported the trial court's findings of fact and conclusions of law, the evidence is legally and factually sufficient to support the judgment in favor of HDH's recovery based upon the theory of promissory estoppel. Accordingly, we overrule that portion of GDH's issue relating to promissory estoppel.

## DISPOSITION

We have sustained GDH's sole issue in part and overruled it in part. Because we have held that the evidence is legally and factually sufficient to support the judgment on the theory of promissory estoppel, we *affirm* the judgment of the trial court.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered July 24, 2013.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)

7



# COURT OF APPEALS

## TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

### JULY 24, 2013

### NO. 12-11-00398-CV

**G.D. HOLDINGS, INC.,**
Appellant
V.
**H.D.H. LAND & TIMBER, L.P.,**
Appellees

---

Appeal from the 273rd Judicial District Court
of Shelby County, Texas. (Tr.Ct.No. 08CV-30,268)

---

THIS CAUSE came on to be heard on the appellate record and the briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that all costs of this appeal are hereby adjudged against the appellant, **G.D. HOLDINGS, INC.**, for which execution may issue, and that this decision be certified to the trial court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*