**Opinion issued July 2, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-14-00686-CV

————————————

## KAMISHA DAVIS, Appellant

## V.

## TEXAS FARM BUREAU INSURANCE, Appellee

---

**On Appeal from the 61st District Court**
**Harris County, Texas**
**Trial Court Case No. 2013-22651**

---

## O P I N I O N

Kamisha Davis sued Texas Farm Bureau Insurance, asserting several causes of action. The trial court granted summary judgment against Davis in favor Texas Farm Bureau. On appeal, Davis raises two issues in which she asserts that the trial

court erred in granting summary judgment on her breach of contract and promissory estoppel claims.

We affirm.

## Background

On August 26, 2009, Kamisha Davis was involved in a motor vehicle accident with Texas Farm Bureau's insured. Davis hired attorney Corey Gomel to pursue a personal injury claim arising out of the accident. On April 19, 2011, Gomel sent Texas Farm Bureau a letter, stating that Davis would be willing to settle her personal-injury claims against Texas Farm Bureau's insured for $37,500. Texas Farm Bureau, through its claims adjuster, Jody Roe, made a counter-offer of $10,000 on May 2, 2011.

Gomel, on behalf of Davis, sent a second settlement offer of $22,500 to Texas Farm Bureau on June 9, 2011. On June 10, 2011, Texas Farm Bureau responded that, "[a]fter careful review and evaluation of the information you have submitted, we believe this claim has a value of $12,000.00." Gomel made a counteroffer of $18,000.00 on June 21, 2011. In response, Texas Farm Bureau sent a letter to Gomel on June 30, 2011, again stating that it valued her claim at $12,000.00.

On July 28, 2011, Davis's attorney faxed Texas Farm Bureau a *Stowers* demand.[1] The fax cover sheet stated, "We are withdrawing past [June 21] demand. Please see attached."

The *Stowers* demand informed Texas Farm Bureau that Davis would settle her claims only if Texas Farm Bureau paid her "the limits of your insured's policy." It further stated, "This will be the only correspondence that you will receive prior to us filing suit." The demand also informed Texas Farm Bureau that the offer to settle for the policy limits expired on August 29, 2011.

Davis never filed a personal injury suit against Texas Farm Bureau or the insured. At some point, Davis retained new counsel. On April 12, 2012, Davis's new counsel sent a letter to Texas Farm Bureau, which stated, "We have been retained by Corey Gomel to assist . . . in the prosecution of this matter for Ms. Davis. Please be advised our client, Ms. Kamisha Davis, has given us authorization to accept your final offer of $12,000.00. Please forward settlement documents to the address above."

On April 20, 2012, claims adjuster Roe responded, denying Davis's claim. Roe informed Davis, "Our offer expired on the two year anniversary from the date of accident 8-26-2009; therefore, we are respectfully declining your client's claim."

---

[1] *See G.A. Stowers Furniture Co. v. Am. Indem. Co.*, 15 S.W.2d 544 (Tex. Comm'n App. 1929, holding approved).

3

Davis filed suit against Texas Farm Bureau on April 16, 2013. She alleged as follows:

> In an attempt to settle the matter, [Texas Farm Bureau] offered [Davis] $12,000.00 to settle [Davis's] claims on June 10, 2011.[2] This offer of settlement had neither a designated time period in which [Davis] had to accept the offer, nor did the offer state that it expired on any date or upon any action or inaction of [Davis] or that the offer would otherwise be revoked. [Texas Farm Bureau] never revoked the offer. Furthermore, [Davis] never rejected the offer. . . . On April 13, 2012, [Davis] accepted the offer to settle the case and sent the acceptance letter via fax. On April 20, 2012, [Texas Farm Bureau] denied the offer, stating that the offer expired on the expiration of limitations of the underlying incident. . . . [Davis] relied on the representations made by [Texas Farm Bureau], that being that there was an open ended offer to settle her case for $12,000.00. [Texas Farm Bureau] never revoked the offer to [Davis] until after [Davis] had accepted the offer. . . . [Texas Farm Bureau has] failed to make the offer of settlement good. [Davis] relied on [Texas Farm Bureau's] promise to [Davis's] detriment.

Based on these allegations, Davis asserted claims for breach of contract, promissory estoppel, fraud, and quantum meruit against Texas Farm Bureau.

Texas Farm Bureau moved for traditional summary judgment on Davis's breach-of-contract claim, asserting that Davis's *Stowers* demand was a rejection of its last $12,000 offer. Texas Farm Bureau argued that, because it offered to settle the dispute for full policy limits, a sum greater than the $12,000 offer, the *Stowers*

---

[2] Texas Farm Bureau sent a letter to Davis on June 10, 2011 stating it valued her claim at $12,000. Davis counteroffered for $18,000 on June 21, and Texas Farm Bureau sent another letter to Davis on June 30 again stating that it valued her claim at $12,000. In any event, the omission of the June 30 letter from Davis's allegations makes no difference to the resolution of this appeal.

4

demand was a counteroffer. Texas Farm Bureau cited authority for the proposition that a settlement offer does not remain open after a counteroffer has been made. Thus, according to Texas Farm Bureau, Davis could no longer accept the $12,000 offer after she made the *Stowers* demand. It asserted that, without a valid acceptance, no contract had been formed between Texas Farm Bureau and Davis as a matter of law.

To support its traditional motion for summary judgment, Texas Farm Bureau offered the written settlement negotiations between the parties, including the *Stowers* demand. It also offered Davis's discovery responses. In addition to its traditional motion for summary judgment, Texas Farm Bureau also requested a no-evidence summary judgment with respect to each of Davis's causes of action.

Davis responded to Texas Farm Bureau's request for summary judgment. She asserted that an issue of material fact existed with regard to whether Texas Farm Bureau's $12,000 settlement offer remained open. To support her position, Davis referred to the April 20, 2012 letter from Texas Farm Bureau claims adjuster Jody Roe, which denied Davis's acceptance of Texas Farm Bureau's June 2011 $12,000 settlement offer.

Davis pointed to Roe's statement that Texas Farm Bureau's "offer expired on the two year anniversary from the date of the accident 8-26-2009; therefore, we are respectfully declining your client's claim." Davis asserted that this statement

5

indicates that Texas Farm Bureau considered its offer to be "open until limitations ran," and that Texas Farm Bureau had not considered the *Stowers* demand to be a counteroffer.  Davis pointed out that Texas Farm Bureau never expressly revoked its $12,000 settlement offer or placed a time limitation on it; thus, it remained open.  Davis acknowledged that an offer "may expire after a reasonable time," but she asserted that, what constitutes a reasonable time is a question of fact, not a question of law.

Without stating the grounds for its decision, the trial court granted Texas Farm Bureau's motion for summary judgment, ordering that Davis take nothing by her claims against Texas Farm Bureau.  This appeal followed.  In two issues, Davis asserts that the trial court erred by granting summary judgment on her claims for breach of contract and promissory estoppel.[3]

## Summary Judgment

### A.    Summary-Judgment Standards

Texas Farm Bureau asserted both traditional and no-evidence grounds in its motion for summary judgment.  *See* TEX. R. CIV. P. 166a(c), (i).  In reviewing a grant of summary judgment, we consider the evidence in the light most favorable to the nonmovant.  *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005)).  We credit evidence

---

[3]    Davis does not appeal the summary judgment with respect to her fraud and quantum meruit claims.

favorable to the nonmovant if reasonable jurors could, and we disregard evidence contrary to the nonmovant unless reasonable jurors could not. *See Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). When, as here, the trial court does not specify the grounds for its grant of summary judgment, we must affirm the summary judgment if any of the theories presented to the court and preserved for appeal are meritorious. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).

After an adequate time for discovery, the party without the burden of proof may move for a no-evidence summary judgment on the basis that there is no evidence to support an essential element of the non-moving party's claim. TEX. R. CIV. P. 166a(i); *see Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008). Summary judgment must be granted unless the non-movant produces competent summary judgment evidence raising a genuine issue of material fact on the challenged elements. TEX. R. CIV. P. 166a(i); *Hamilton*, 249 S.W.3d at 426. A non-moving party is "not required to marshal its proof; its response need only point out evidence that raises a fact issue on the challenged elements." TEX. R. CIV. P. 166a (cmt. 1997).

A no-evidence summary judgment motion is essentially a motion for a pretrial directed verdict. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 581–82 (Tex. 2006). Accordingly, we apply the same legal-sufficiency standard of review

7

that we apply when reviewing a directed verdict.  *City of Keller*, 168 S.W.3d at 823.  Applying that standard, a no-evidence point will be sustained when (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact.  *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003); *see City of Keller*, 168 S.W.3d at 810.  Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact, and the legal effect is that there is no evidence.  *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983).  In other words, we review a no-evidence summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions.  *See Hamilton*, 249 S.W.3d at 426 (citing *City of Keller*, 168 S.W.3d at 822).

To prevail on a traditional Rule 166a(c) summary judgment motion, a movant must prove that there is no genuine issue regarding any material fact and that it is entitled to judgment as a matter of law.  *See* TEX. R. CIV. P.  166a(c); *Little v. Tex. Dep't of Criminal Justice*, 148 S.W.3d 374, 381 (Tex. 2004).  A defendant moving for summary judgment must either (1) disprove at least one element of the plaintiff's cause of action or (2) plead and conclusively establish

8

each essential element of an affirmative defense to rebut the plaintiff's cause. *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995). The movant must conclusively establish its right to judgment as a matter of law. *See MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986). A matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence. *See City of Keller*, 168 S.W.3d at 816.

If the movant meets its burden, the burden then shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

## B. Breach of Contract

In her first issue, Davis asserts that the trial court erred by granting summary judgment on her breach-of-contract claim.

The elements of a valid contract are as follows: (1) an offer, (2) an acceptance, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Jim Maddox Props., LLC v. WEM Equity Capital Invs., Ltd.*, 446 S.W.3d 126 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (citing *DeClaire v. G & B*

9

*Mcintosh Family Ltd. P'ship*, 260 S.W.3d 34, 44 (Tex. App.—Houston [1st Dist.] 2008, no pet.)). To prevail on a breach of contract claim, a plaintiff must show (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained as a result of the breach. *B & W Supply, Inc. v. Beckman*, 305 S.W.3d 10, 16 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (citing *Valero Mktg. & Supply Co. v. Kalama Int'l*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.)).

Here, to prevail on its traditional motion for summary judgment, Texas Farm Bureau had to conclusively establish that no contract existed between it and Davis because Davis's *Stowers* demand constituted a counteroffer to Texas Farm Bureau's $12,000 settlement offer. A counteroffer is an offer made by an offeree to her offeror relating to the same matter as the original offer and proposing a substituted bargain differing from that proposed by the original offer. *Thurmond v. Wieser*, 699 S.W.2d 680, 682 (Tex. App.—Waco 1985, no writ). That is, a counteroffer must itself be an offer capable of being accepted. *See* RESTATEMENT (SECOND) OF CONTRACTS § 39 cmt. a (1981); 1 ARTHUR LINTON CORBIN, CORBIN ON CONTRACTS § 3.35, at 490–91 (rev. ed. 1993). Once accepted, the original offeror will be bound to the terms of the counteroffer. *See* CORBIN ON CONTRACTS, § 3.35, at 490-91 n.1.

10

A material change in a proposed contract constitutes a counteroffer. *G.D. Holdings, Inc. v. H.D.H. Land & Timber, L.P.*, 407 S.W.3d 856, 861 (Tex. App.—Tyler 2013, no pet.) (citing *Gilbert v. Pettiette*, 838 S.W.2d 890, 893 (Tex. App.—Houston [1st Dist.] 1992, no pet.)). A contractual provision dealing with payment is always an essential element or a material term. *Id.* (citing *Parker Drilling Co. v. Romfor Supply Co.*, 316 S.W.3d 68, 74 (Tex. App.—Houston [14th Dist.] 2010, pet. denied).

In this case, it is clear from the express terms of the *Stowers* demand that it related to the same subject matter as Texas Farm Bureau's $12,000 offer: namely, settlement of Davis's personal injury claims against Texas Farm Bureau's insured. Davis's *Stowers* demand proposed a different settlement payment from that proposed by Texas Farm Bureau in its June 2011 offer. Texas Farm Bureau had offered to settle Davis's claims for $12,000. In contrast, Davis's *Stowers* demand provided that she would settle her claims only if Texas Farm Bureau paid her "the limits of your insured's policy." The summary judgment evidence showed that the policy limits were greater than $12,000.

The terms of the *Stowers* demand were definite, certain, and capable of being accepted by Texas Farm Bureau. In other words, they were sufficient to create a power of acceptance in Texas Farm Bureau. If it had accepted the terms of the *Stowers* demand agreement, Texas Farm Bureau could reasonably have

11

expected to be bound by them. We conclude that Davis's *Stowers* demand, when viewed objectively, constituted a counteroffer to Texas Farm Bureau's June 2011 settlement offer as a matter of law.

"A counteroffer constitutes a rejection, not an acceptance, of the original offer." *Blackstone v. Thalman*, 949 S.W.2d 470, 473 (Tex. App.—Houston [14th Dist.] 1997, no writ). An offeree's power of acceptance is terminated by the making of a counteroffer, unless the offeror has manifested a contrary intention or unless the counteroffer manifests a contrary intention of the offeree. *Thurmond*, 699 S.W.2d at 682; *see also* RESTATEMENT (SECOND) OF CONTRACTS § 39(2). Once it has been terminated by the making of a counteroffer, an offeree's power to accept the original offer cannot be revived by later accepting the offer. *See Legal Sec. Life Ins. Co. v. Ward*, 373 S.W.2d 693, 698 (Tex. Civ. App.—Austin 1963, no writ) (holding that the rejection of an offer has the effect of terminating it, and it cannot be revived by later acceptance); *see also Figueroa v. Davis*, 318 S.W.3d 53, 68–69 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (stating that, "[u]nder contract principles, once an offer is rejected, it is terminated, and the rejecting party cannot thereafter accept it"); RESTATEMENT (SECOND) OF CONTRACTS § 36 (1981) (offeree's power of acceptance is terminated by rejection of offer); *id.* § 35(2) (1981) (a contract cannot be created by acceptance of an offer after the power of acceptance has been terminated).

By making a counteroffer in her *Stowers* demand, Davis terminated her power of acceptance over Texas Farm Bureau's June 2011 settlement offer. The summary judgment evidence in the record shows that Texas Farm Bureau's June 2011 settlement offer did not manifest any intent to keep the offer open for any fixed period of time. *See* RESTATEMENT (SECOND) OF CONTRACTS § 39(2) cmt. c. ("An offeror may state in his offer that it shall continue for a stated time in any event and that in the meanwhile he will be glad to receive counter-offers."). Similarly, Davis did not state in her *Stowers* demand—that is, her counteroffer— that she was still holing Texas Farm Bureau's offer under advisement. *See id.* ("[A]n offeree may state that he is holding the offer under advisement, but that if the offeror desires to close a bargain at once the offeree makes a specific counter-offer . . . ."); *see also J. M. Radford Grocery Co. v. Noyes*, 293 S.W. 653, 654 (Tex. Civ. App.—Austin 1927, no writ) ("A counteroffer by the offeree, relating to the same matter as the original offer, is a rejection of the original offer, unless the offeree at the same time states in express terms that he is still keeping the original offer under advisement.").

In sum, Davis's April 12, 2012 acceptance of Texas Farm Bureau's $12,000 offer came too late to create a contract between the parties. *See Legal Sec. Life Ins.*, 373 S.W.2d at 698. We hold that Texas Farm Bureau met its summary-

13

judgment burden to conclusively show that there was no enforceable contract between Texas Farm Bureau and Davis.

Because Texas Farm Bureau established its entitlement to summary judgment as a matter of law, Davis was then required to present to the trial court competent summary judgment evidence raising a genuine issue of material fact that would preclude summary judgment in favor of Texas Farm Bureau. *See Centeq Realty*, 899 S.W.2d at 197.

Davis points to claims adjuster Roe's April 20, 2012 letter, which stated that Davis's claim was denied because Texas Farm Bureau's "offer expired on the two year anniversary from the date of the accident 8-26-2009." She asserts the letter indicates that Texas Farm Bureau's offer remained open to acceptance after the *Stowers* demand. More specifically, Davis claims that the letter is evidence showing either (1) that Texas Farm Bureau never considered the *Stowers* demand to be a counteroffer or (2) that Texas Farm Bureau re-offered the $12,000 to after Davis made *Stowers* demand. We disagree.

Even presuming Roe's letter shows that she thought there was an open offer after the *Stowers* demand, whether a valid offer and acceptance have occurred is based on objective standards; it is not based on the subjective beliefs of the parties. *See Fuqua v. Fuqua*, 750 S.W.2d 238, 245 (Tex. App.—Dallas 1988, writ denied); *Slade v. Phelps*, 446 S.W.2d 931, 933 (Tex. Civ. App.—Tyler 1969, no writ); *see*

14

*also Gordin v.* Shuler, 704 S.W.2d 403, 407 (Tex. App.—Dallas 1985, writ ref'd n.r.e.) ("The fact that one party thought, supposed, or expected something is not sufficient to show an enforceable agreement."). To determine whether there was an offer and acceptance using an objective standard, courts consider the parties' communications and actions pertaining to the formation of the contract. *See Komet v. Graves*, 40 S.W.3d 596, 601 (Tex. App.—San Antonio 2001, no pet*.); Domingo v. Mitchell*, 257 S.W.3d 34, 41 (Tex. App.—Amarillo 2008, pet. denied); *Wiley v. Bertelsen*, 770 S.W.2d 878, 882 (Tex. App.—Texarkana 1989, no writ).

As stated, an offeree's power of acceptance is terminated by the making of a counteroffer, unless the offeror has manifested a contrary intention or the counteroffer manifests a contrary intention of the offeree. *Thurmond*, 699 S.W.2d at 682. We have concluded that the *Stowers* demand was a counteroffer, and that neither the *Stowers* demand nor any communication from Texas Farm Bureau, preceding Davis purported acceptance, manifested an intention by Texas Farm Bureau to hold the offer open. Roe's letter alone cannot retroactively create an open offer after Davis purported to accept the offer. This is true regardless of whether she, Texas Farm Bureau, or Davis subjectively believed the offer remained open after the counteroffer was made. Rather, whether the offer remained open is determined by examining the communications of the parties before the acceptance was tendered.

15

The communications between the parties before the acceptance show no objective manifestations to keep the offer open after Davis's counteroffer. For the offer to have been open at the time of Davis's acceptance, Texas Farm Bureau would have needed either (1) to have indicated that its June 2011 offer would remain open, even if a counter-offer was made, (2) or to have expressly responded to Davis's counteroffer by stating that the offer remained open. The summary judgment record indicates Texas Farm Bureau did neither.

After reviewing all the summary-judgment evidence in the record, we conclude that Davis failed to meet her burden. None of the summary judgment evidence created a material fact issue regarding whether Davis's *Stowers* demand, acting as a counteroffer, terminated Davis's power to accept the June 2011 offer or whether Texas Farm Bureau's offer remained open after the counteroffer. We conclude that the summary-judgment evidence conclusively showed that there was not a valid contract between Texas Farm Bureau and Davis to settle her personal-injury claims. We hold that the trial court did not err by granting summary judgment on Davis breach-of-contract claim.

We overrule Davis's first issue.

## C. Promissory Estoppel

In her second issue, Davis asserts that the trial court erred by granting Texas Farm Bureau's no-evidence motion for summary judgment on her promissory-

estoppel claim.[4] Davis first complains that the motion was inadequate with respect to her promissory-estoppel claim because it "contains no analysis, no facts and case law supporting its position, and [Texas Farm Bureau] makes no cogent arguments justifying why summary judgment should be granted."

Rule of Civil Procedure 166a(i) governs no-evidence motions for summary judgment. *See* Tex. R. Civ. P. 166a(i). Rule 166a(i) provides that a motion must "state the elements as to which there is no evidence." *Id.* A no-evidence motion "must be specific in challenging the evidentiary support for an element of a claim or defense; paragraph (i) does not authorize conclusory motions or general no-evidence challenges to an opponent's case." *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009) (quoting Tex. R. Civ. P. 166a cmt.–1997). "The underlying purpose of this requirement 'is to provide the opposing party with adequate information for opposing the motion, and to define the issues for the purpose of summary judgment.'" *Id.* at 311 (quoting *Westchester Fire Ins. Co. v. Alvarez*, 576 S.W.2d 771, 772 (Tex. 1978)). The supreme court analogized this purpose to that of "fair notice" pleading requirements. *Id.*

Here, Texas Farm Bureau's motion specifically listed each challenged element of the promissory-estoppel claim. Texas Farm Bureau stated that Davis

---

[4] Texas Farm Bureau filed only a no-evidence motion for summary judgment with regard to Davis's promissory-estoppel claim; it did not assert a traditional motion for summary judgment regarding this claim.

could not establish any of these elements. Thus, Texas Farm Bureau identified the elements as to which it contended there was no evidence, thereby giving Davis "fair notice" of what it was challenging. *See id.* Thus, we conclude that, as to Davis's promissory-estoppel claim, the no-evidence motion met the requirements of Rule 166a(i). *See Gary E. Patterson & Assocs., P.C. v. Holub*, 264 S.W.3d 180, 201 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (holding that motion identifying and then challenging all elements of claim was sufficiently specific to satisfy Rule 166a(i)).

As identified by Texas Farm Bureau in its motion, the elements of promissory estoppel are as follows: (1) a promise; (2) foreseeability of reliance thereon by the promisor; and (3) substantial reliance by the promisee to his detriment. *Miller v. Raytheon Aircraft Co.*, 229 S.W.3d 358, 378–79 (Tex. App.—Houston [1st Dist.] 2007, no pet.). Attached to Davis's response to Texas Farm Bureau's motion was the following: (1) the April 20, 2012 letter from Roe; (2) the June 10, 2011 letter from Texas Farm Bureau stating that "[a]fter careful review and evaluation of the information you have submitted, we believe this claim has a value of $12,000.00";[5] and (3) the April 13, 2012 letter from Davis's attorney

---

[5]     As mentioned, Davis responded to Texas Farm Bureau's June 10 letter on June 21 with a counteroffer of $18,000 to settle her claims. Texas Farm Bureau responded on June 30 again stating that it valued Davis's claim a $12,000.

stating that Davis had given her "authorization to accept your final offer of $12,000.00. Please forward settlement documents to the address above."[6]

Although not expressly mentioning promissory estoppel, Davis asserted the following in her response:

> There is . . . more than a mere scintilla of evidence that there was an offer (Defendant would pay Plaintiff $12,000.00 in exchange for a full and final settlement.) Reliance on that offer by Plaintiff was foreseeable. There was nothing unreasonable about the offer and the offer was made based on a valid dispute between Plaintiff and Defendant's insured. There is also evidence of substantial reliance as Plaintiff has given up her right to pursue other forms of recovery with the lapse of time.

We conclude that Davis's evidence fails to raise a genuine issue of material fact on each element of her promissory-estoppel claim. First, Davis has not presented evidence of a promise. To support a finding of promissory estoppel, a successful promissory estoppel claim must be based on "an actual promise." *See Stable Energy, L.P. v. Kachina Oil & Gas, Inc.*, 52 S.W.3d 327, 336 (Tex. App.—Austin 2001, no pet.). The asserted "promise" must be sufficiently specific and definite so that it would be reasonable and justified for the promisee to rely on it as a commitment to future action. *Comiskey v. FH Partners, LLC*, 373 S.W.3d 620, 635 (Tex. App.—Houston [14th Dist.] 2012, pet. denied).

---

[6] Davis did not include the *Stowers* demand as part of her summary-judgment evidence.

19

Here, Davis appears to characterize the "promise" to be Texas Farm Bureau's "offer" to pay her "$12,000.00 in exchange for a full and final settlement." However, there was no evidence that Texas Farm Bureau definitively and unconditionally promised Davis anything. Texas Farm Bureau's June 10, 2011 letter, offered by Davis, reads:

> This will acknowledge receipt of your letter dated June 9, 2011, wherein you made a demand of $22,500.00 to settle your client's claim. After careful review and evaluation of the information you have submitted, we believe this claim has a value of $12,000.00. Please inform us of your client's response.

The letter informed Davis that Texas Farm Bureau believed her claim was worth $12,000 and inquired of her attorney whether Davis would be willing to settle for that amount. We note that there is a distinction between tendering a promise to pay someone a certain price to settle a claim and an inquiry into whether that person is willing to settle for that amount. In this regard, the letter reflects the fluid and indefinite nature of an ongoing negotiation process, nothing more. At most, Davis's evidence shows an offer to settle, which was conditioned on her acceptance of the offer. The evidence did not reflect a commitment by Texas Farm Bureau to pay Davis $12,000 or otherwise evidence a definite, unconditional promise. Thus, Davis offered no evidence of an "actual promise," an essential element for any promissory-estoppel claim.

20

Second, Davis offered no evidence of foreseeability. Until Davis accepted the offer, Texas Farm Bureau was free to withdraw it. *See Brown v. Haywood,* No. 07–02–0424–CV, 2004 WL 757962, at *4 (Tex. App.—Amarillo Apr. 8, 2004, pet. denied) (mem. op.). Thus, until Davis accepted the offer, it was not foreseeable to Texas Farm Bureau that Davis would rely on it. *See, e.g., Henderson v. Tex. Commerce Bank–Midland, N.A.*, 837 S.W.2d 778, 782 (Tex. App.—El Paso 1992, writ denied) (holding that, with respect to promissory-estoppel claim, debtor failed to offer evidence that bank could foresee that debtor would rely on preliminary negotiations without meeting all conditions on loan).

Finally, Davis offered no evidence that she substantially relied on the offer to her detriment. Davis claimed, "There is also evidence of substantial reliance as Plaintiff has given up her right to pursue other forms of recovery with the lapse of time." In making this assertion, Davis apparently relies on the inference that, because she waited until after limitations ran on her claim to accept the offer, she must have relied on the offer in choosing to wait. However, Davis points to no evidence to show how her reliance on the June 2011 offer, made two months before limitations ran, resulted in her foregoing "her right to pursue other forms of recovery"; nor did she show it was reasonable and justified. *See Ortiz v. Collins*, 203 S.W.3d 414, 421 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (stating that reliance must be reasonable and justified).

21

Generally, reliance on representations made in an adversarial context, such as litigation, is not justified. Here, the parties were not involved in litigation; however, the offer was made in an adversarial context. *See Ortiz*, 203 S.W.3d at 422 ("We hold that, as a matter of law, the parties' relationship remained adversarial, and thus any reliance by Ortiz on statements made by appellees during the negotiation process was unjustified and unreasonable."). As stated, Texas Farm Bureau was free to withdraw its offer at any time before Davis's acceptance. Thus, Davis waited to accept the offer until after limitations ran at her own peril. By so doing, it was her choice to forego "her right to pursue other forms of recovery with the lapse of time." Davis presented no evidence that, under the circumstances, it was reasonable or justified to wait until after limitations ran to accept the offer.

We conclude that Davis failed to raise an issue of fact on each element of her promissory-estoppel claim. Thus, we hold that the trial court did not err in granting summary judgment on that claim.

**Conclusion**

We affirm the judgment of the trial court.

Laura Carter Higley
Justice

Panel consists of Chief Justice Radack and Justices Higley and Massengale.